IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

CHARLOTTE BUCHANAN, )
)
    Plaintiff, )
)
v. ) Case No. CV-05-356-JHP
)
BOARD OF COUNTY COMMISSIONERS )
OF MUSKOGEE COUNTY and JOHN )
DAVID LUTON, in his official capacity as )
MUSKOGEE COUNTY DISTRICT )
ATTORNEY, )
)
    Defendants. )

## ORDER and OPINION

    Before the Court is Defendant Board of County Commissioners of Muskogee County's Motion for Summary Judgment [dkt. 36] and Brief in support [dkt. 37], Plaintiff Charlotte Buchanan's Response in opposition [dkt. 46] and Brief in support [dkt. 47], and Defendant's Reply [dkt. 48]. Plaintiff has asserted claims against Defendant pursuant to 42 U.S.C. § 1983 and the Oklahoma Governmental Tort Claims Act, which allegations the Board defends by stating it was in no way involved in the underlying events, and is entitled to immunity in any event. For reasons stated herein, the Court finds that Defendant is entitled to summary judgment on all of Plaintiff's claims. Accordingly, Defendant's Motion is GRANTED.

## Background

From the undisputed facts in the case,[1] the Court finds as follows:

On August 12, 2002, Plaintiff witnessed her neighbor, Chad Burkhalter, shoot a gun at a moving car. The District Attorney subsequently filed criminal charges against Burkhalter and issued a material witness subpoena for Plaintiff to testify in that case. The subpoena was served on Tyreece Buchanan for Charlotte Buchanan at Plaintiff's residence on March 13, 2003. Plaintiff failed to appear at any of the preliminary hearings in the Burkhalter case. The District Attorney therefore made a verified application, which the Muskogee County District Court granted on April 28, 2003, to require Plaintiff to "enter into an agreement with the Court with good and sufficient security in such sums as the Court may deem proper to secure her appearance at the trial . . . and that [she] be commanded into the custody of the Sheriff of Muskogee County, Oklahoma, until such security shall be made." [Def. Mtn. at 5-6, ¶ 8 & Ex. 7 thereto.] On March 12, 2004, the District Attorney dismissed the case against Burkhalter and refiled it in juvenile court, where Burkhalter plead out. The juvenile court case was dismissed on

---

[1] The Court notes that Plaintiff characterizes Defendant's statement of the case in its Motion as "fairly accurate, with a few notable exceptions," but fails to detail any of these exceptions as required by LCvR56.1(c). The local rule states, "The response brief in opposition to a motion for summary judgment . . . shall begin with . . . a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and if applicable, shall state the numbered paragraphs of the movant's facts that are disputed." Despite noting that "Plaintiff takes issue with a number of the Defendant's alleged uncontroverted facts," Plaintiff's Response contains only one numbered statement of fact, and raises only immaterial differences in any event. Under LCVR56.1(c), "[a]ll material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." Thus, the Background provided by the Court herein is drawn exclusively from Defendant's Motion.

May 5, 2004. Neither the Court nor the District Attorney, however, withdrew the material witness warrant against Plaintiff, and the warrant therefore remained outstanding with the Sheriff.

On December 7, 2004, between 8:00 and 9:00 p.m., a Muskogee City police officer noticed Plaintiff's tag light was out and made a routine traffic stop. When the officer ran a record check on Plaintiff, he found the outstanding warrant for her arrest. The officer placed Plaintiff under arrest and took her to the Muskogee County jail for booking, where she was held overnight. As soon as the District Attorney informed police that Plaintiff was no longer needed as a material witness, Plaintiff was released from custody at 8:30 a.m. on December 8, 2004.

On August 3, 2005, Plaintiff filed this lawsuit in state court, claiming damages for the emotional distress she suffered from being arrested and staying in jail overnight. Defendant then removed the action to this Court. Plaintiff originally named the Board of County Commissioners of Muskogee County as the sole defendant, pursuant to 19 Okla. Stat. § 4. She later amended her Complaint to name the District Attorney as a defendant, "in an abundance of caution," despite the fact that "Plaintiff still believes that, even assuming the District Attorney is not an officer of Muskogee County, he is in fact an agent of the County for the purpose of enforcing the laws and protecting its citizens, and . . . does not specifically need to be added to this lawsuit." [Pltf. Mtn. to Amend at 2, ¶¶ 11-12.] Defendant raises Plaintiff's ongoing confusion regarding 19 Okla. Stat. § 4 in its Motion for Summary Judgment, which Motion is currently at issue.

## Discussion

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine

3

issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. Simms v. Oklahoma, 165 F.3d 1321, 1326 (10th Cir. 1999). The presence of a genuine issue of material fact defeats the motion. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. Id. at 249.

**I. The Board is entitled to summary judgment on Plaintiff's § 1983 claims.**

Section 1983 does not create any substantive civil rights, but is simply a procedural mechanism for enforcing rights established elsewhere in the Constitution or federal laws. Albright v. Oliver, 510 U.S. 266, 271 (1994). The threshold inquiry for a § 1983 suit is therefore whether the plaintiff has properly implicated a constitutional right. Id.; *see also* Saucier v. Katz, 533 U.S. 194, 201 (2001). If the plaintiff fails to establish a constitutional violation, no further inquiry is required, and the defendant is entitled to dismissal. Saucier, 533 U.S. at 200-01. If a constitutional violation is established, the plaintiff must prove a causal link between the injury and the defendant's "personal participation." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996). In other words, the plaintiff must establish that the defendant "personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." *See* id. at 999. Where, as here, the defendant is a local government entity, the defendant must be sued only for its own unconstitutional policies, and not merely for the acts of its employees. Monell v.

4

New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  When such policy is premised upon a failure to act, the plaintiff must show "deliberate indifference" by the defendant to the plaintiff's legal rights.  Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993).  If the plaintiff cannot show this type of "personal participation" by the defendant, the defendant is entitled to dismissal.  Jenkins, 81 F.3d at 994-95.

## A.  Plaintiff's arrest does not constitute a constitutional violation.

Plaintiff alleges that her constitutional rights were violated when she was arrested pursuant to outstanding material witness warrant which should have been withdrawn when the Burkhalter case was dismissed.  It is well established that "an arrest made on the basis of a facially valid warrant which turns out to have been cleared before the arrest violates the Fourth Amendment."  Wilson v. City of Boston, 421 F.3d 45, 57 (1st Cir. 2005).  Thus, had Plaintiff's arrest been founded upon a recalled warrant, instead of a warrant that should have been recalled but wasn't, she would have a valid § 1983 claim.  Because the warrant underlying Plaintiff's arrest was still valid, however, Plaintiff has "no legal basis for a claim of a constitutional violation."  Masters v. Crouch, 872 F.2d 1248, 1253 (6th Cir. 1989) (citing, *inter alia*, Baker v. McCollan, 443 U.S. 137, 145 (1979)); *see also* Kahlich v. City of Grosse Pointe Farms, 120 Fed. Appx. 580, 585 (6th Cir. 2005) (finding no constitutional harm to plaintiff when police arrested him pursuant to a warrant which had erroneously not been recalled).

Plaintiff also cannot prove that the failure to cancel the material witness warrant was according to any governmental policy or, indeed, anything **but** an innocent mistake.  All of the entities involved in the events underlying this lawsuit relied on a facially valid warrant.  Plaintiff has no evidence that the Muskogee City police department or the Muskogee County sheriff's

5

office knew or should have known that the material witness warrant should have been withdrawn prior to her arrest. She knows of no other persons who have been improperly arrested on warrants that should have been recalled. It is well settled that such "singular incidents standing alone are insufficient to establish a pattern of unconstitutional conduct." Kahlich, 120 Fed. Appx. at 585 (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)). Plaintiff does not show that "the purported need for [corrective action] was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [Board] was deliberately indifferent to the need." *See* id. (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)) (internal quotations omitted); *see also* Hinton, 997 F.2d at 782. Indeed, the Board had no duty to take corrective action against such errors – even if they did result in constitutional violations – because the Board wholly lacks that authority. Thus, "[t]he failure to do so cannot represent an unconstitutional municipal policy or custom." *See* Foti v. County of San Mateo, 90 Fed. Appx. 488, 491 (9th Cir. 2003).

### B. The Board was not involved in Plaintiff's arrest.

In order for a county to be liable under § 1983, the plaintiff must establish some policy or custom that directly caused the constitutional violation in question. *See* Grech v. Clayton County, Ga., 335 F.3d 1326, 1329 (11th Cir. 2003). Here, Plaintiff makes no such allegation and, in fact, admits that she "is fully aware that the Board . . . took no action that caused her to be arrested." [Pltf. Resp. at 3.] Plaintiff was arrested by the Muskogee City police department pursuant to a warrant requested by the District Attorney, approved by the county district court, and issued by the Muskogee County sheriff. Plaintiff sued the Board of County Commissioners, pursuant to 19 Okla. Stat. § 4, and asserts that "the fact that the County Sheriff is a separate

6

entity from the Board of County Commissioners has no application to this lawsuit whatsoever," based on her reading of that statute. In response, Defendant argues that 19 Okla. Stat. § 4 only applies to the Oklahoma Governmental Tort Claims Act, and not to § 1983 litigation. Plaintiff correctly notes that the statute itself makes no such distinction; however, the Court finds that the case law on § 1983 is abundantly clear.

Under Monell, a county cannot be liable based on the doctrine of *respondeat superior*. 436 U.S. at 694. The acts of the municipality – *i.e.*, the Board – must therefore be distinguished from the acts of the municipality's employees – *e.g.*, the Sheriff.[2] Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 (1986). Thus, to establish municipal liability, Plaintiff must show that the county "has authority and responsibility over the governmental function in issue" and must "identify those officials who speak with final policymaking authority . . . concerning the act alleged to have caused the particular constitutional violation in issue." Grech, 335 F.3d at 1330 (citing Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 737 (1989)). State law – such as 19 Okla. Stat. § 4 – "cannot answer the § 1983 policymaker question by simply labeling an official as a county or state official" or by dictating whom to sue. *See* id. (citing McMillian v. Monroe County, 520 U.S. 781, 784 (1997)). Rather, Plaintiff must affirmatively show that the Board has final policymaking authority over the Sheriff's office. *See* id. at 1329-30.

It is well settled in Oklahoma that the Board of County Commissioners and the Sheriff's

---

[2]Defendant also asserts that, just like the Sheriff's office, the District Attorney's office is also a separate entity from the Board. Indeed, the Tenth Circuit has held that "under Oklahoma law the district attorney is an arm of the state." Arnold v. McClain, 926 F.2d 963, 965-66 (10th Cir. 1991). The Board therefore clearly has no control over the District Attorney's office such that liability would attach. Plaintiff concedes that, because she has been allowed to add the District Attorney as a party, "no further discussion is necessary" regarding the Board's potential liability for the District Attorney's office. [Pltf. Resp. at 4.]

7

office operate autonomously. *See* 19 Okla. Stat. §§ 131(A), 547 (identifying sheriff as independently elected official and defining his duties); id. § 339 (defining the scope of the Board of County Commissioners' powers). Where the Board does not – and indeed, **cannot** – enact or enforce law enforcement policy, it cannot be held liable for violations of such policy. *See* Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988); *see also* Grech, 335 F.3d at 1331 ("[L]ocal governments such as counties can never be liable under § 1983 for the acts of those officials whom the local government has no authority to control.") (quoting Turquitt v. Jefferson County, 137 F.3d 1285, 1292 (11th Cir. 1998)) (internal quotations and alterations omitted). Applying Oklahoma law, the Court in Meade specifically held that "County Commissioners . . . cannot be held liable for the deputies' alleged [violation because u]nder Oklahoma law, the Board has no statutory duty to hire, train, supervise or discipline the county sheriffs or their deputies. . . ." Meade, 841 F.2d at 1528. Here, Plaintiff does not allege that the Board issued a direct order, or voluntarily undertook responsibility over the Sheriff's office, or in any way acted to cause her injury. Indeed, she admits that the Board was not involved in the underlying events. The Board is therefore "not affirmatively linked with the alleged [violation]," and cannot be held liable. Id. Accordingly, Defendant's Motion is GRANTED as to Plaintiff's § 1983 claim.

## II. The Board is entitled to summary judgment on Plaintiff's state tort claims.

Plaintiff claims that she was falsely arrested by the Muskogee City police department, in violation of state law, due to negligence by the Board, presumably for allowing the material witness warrant to remain active even after the Burkhalter case was dismissed. In this matter, Plaintiff properly named the Board as a defendant under the Oklahoma Governmental Tort Claims Act.

The Oklahoma Governmental Tort Claims Act is the exclusive means by which an injured plaintiff may recover against a governmental entity for its negligence. Fuller v. Odom, 741 P.2d 449, 451 (Okla. 1987). The Act reaffirms the sovereign immunity of the state, its political subdivisions, and all employees acting within the scope of their employment, subject to specific instances of waiver. *See* 51 Okla. Stat. § 152.1(A)-(B). In this case, the Board's immunity is not subject to waiver under the Act. Accordingly, the Board is entitled to summary judgment on Plaintiff's state tort claims.

### A. Plaintiff's arrest occurred pursuant to a lawful court order.

The Act specifically provides that "[t]he state or political subdivision shall not be liable if a loss or claim results from . . . [e]xecution or enforcement of the lawful orders of any court." 51 Okla. Stat. § 155(3). Here, the Muskogee City police department arrested Plaintiff pursuant to a lawful order of the Muskogee County District Court. The Board (or, by extention, the Sheriff) was in no way involved in prosecuting the Burkhalter case, or declaring Plaintiff a material witness therein, or causing her arrest, nor was the Board (or the Sheriff) responsible for withdrawing the warrant and thereby preventing Plaintiff's arrest. The city police did deliver Plaintiff to the county jail, where she was held for less than twelve hours; however, this minimal involvement by the Sheriff in Plaintiff's arrest was also undertaken pursuant to the lawful order of the court.

Plaintiff argues, without citing any authority in support, that once the Burkhalter case was dismissed, the court's order for the warrant was no longer lawful. However, the Act also provides immunity from claims resulting from "[j]udicial, quasi-judicial, or prosecutorial functions." 51 Okla. Stat. § 155(2). Although Plaintiff argues that the failure to withdraw the

9

warrant was a "ministerial act" not subject to immunity, clearly the acts of "preparing and obtaining an arrest warrant [are] part of [the District Attorney's] prosecutorial functions[, such that the] District Attorney is immune from tort liability for such acts as a matter of law" under the Act. White v. Harris, 122 P.3d 484, 488-89 (Okla. Civ. App. 2005). Furthermore, although "absolute immunity does not extend to actions that are primarily investigative or administrative in nature, . . . it may attach even to such administrative or investigative activities when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." Id. Thus, to the extent that obtaining an arrest warrant constitutes a "prosecutorial function" as it relates to a court case, the withdrawal of that warrant upon dismissal of the case must also be a "prosecutorial function." Innocent mistakes in executing such functions do not bar the invocation of immunity. Id. at 489 (citing Orobono v. Koch, 30 F. Supp. 2d 840, 843 (E.D. Pa.1998). Finally, and most importantly for purposes of this Motion, these functions – whether "prosecutorial" or "ministerial" – are not the Board's responsibility to perform, nor within the Board's authority to control. Thus, the Board is entitled to judgment as a matter of law on Plaintiff's state tort claims.

## Conclusion

In sum, Plaintiff has effectively admitted that she has no evidence to prove a cause of action against Defendant Board of County Commissioners. Accordingly, and for all the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED in its entirety.

IT IS SO ORDERED this 16th day of June 2006.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma